**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **RENE MICHELLE TAYLOR #326209** | § | |
| | § | |
| **V.** | § | **W-19-CA-467-ADA** |
| | § | |
| **ROSE NELSON, et al.** | § | |

## ORDER

Before the Court are Plaintiff's Amended Complaint (#24), Defendants' Motion for Summary Judgment (#26), Plaintiff's Response (#29), and Plaintiff's supplements (#23, 30, 31). Plaintiff, proceeding pro se, has paid the full filing fee in this case.

STATEMENT OF THE CASE

At the time she filed her complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Texas Department of Criminal Justice—Correctional Institutions Division. Plaintiff alleges that Defendants violated her right to free exercise of religion by confiscating her hijab. Plaintiff relatedly asserts that Defendants do not offer her an adequate religious diet. Finally, Plaintiff also alleges Defendants retaliated against her after the incident by refusing to provide passes for religious services. Plaintiff brings claims under 42 U.S.C. § 1983 for violation of her First Amendment rights and under 42 U.S.C. § 2000cc-1(a), the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff sues Rose Nelson, a TDCJ correctional officer, Joy Fattori, a chaplain at the Lane Murray Unit, Michael Rutledge, Assistant Director of Chaplaincy Operations, and Kimberly

Massey, then-Assistant Warden at the Lane Murray Unit. Plaintiff seeks injunctive relief and punitive damages.

DISCUSSION AND ANALYSIS

A.    Factual Background

Plaintiff has been incarcerated at various TDCJ facilities since 1981. In July of 2017, Plaintiff was suffering from significant medical problems, including Bell's palsy, facial drooping, difficulty swallowing, and shingles. Because of these issues, Plaintiff was medically reassigned to the Lane Murray Unit on July 27, 2017. Plaintiff was transferred to the Hobby Unit on November 8, 2019, and has remained there since.

Plaintiff contends that she is a sincerely practicing Muslim who believes in the importance of covering herself with a hijab, consuming a pork-free diet, fasting during Ramadan, and praying in accordance with her religion. Plaintiff contends that for the first 30 years of her incarceration, there were no policies that prevented Plaintiff from covering herself in the way she chose, and her pork-free diet was easily accommodated.

On August 9, 2017, Plaintiff was returning to her assigned dorm when Defendant Nelson forced Plaintiff to remove her hijab because Nelson contended that the two-piece hijab was not compliant with TDCJ policy. TDCJ permits Muslim female inmates to wear hijabs at all times and to possess two hijabs—one for daily use and one for religious services. TDCJ also requires that hijabs be white, 40.9" x 40.9", and wrapped around the head and tied with a knot at the base of the neck.

Plaintiff contends that she told Nelson that, according to her religion, she was required to be covered outside her living area and in the presence of males. Plaintiff

2

explained that she could see a male officer, but Plaintiff contends that Nelson refused to open the door to Plaintiff's living area without Plaintiff first removing her hijab and giving it to Nelson. Plaintiff claims she then removed her hijab. Plaintiff alleges she then spoke to officer Hall, who later spoke with Nelson, and Plaintiff's hijab was returned to her approximately twenty minutes later.

Plaintiff was then sent to see Defendant Fattori, the chaplain, who told Plaintiff that the hijab she was wearing was noncompliant with the hijab rules because it was too large. After Plaintiff removed the hijab, Fattori discovered Plaintiff was wearing a second hijab underneath the larger, noncompliant hijab. Fattori confiscated the noncompliant hijab. The second hijab was being worn in accordance with TDCJ policy. Plaintiff contends that Fattori showed Plaintiff a video of the proper way to wear a head wrap in TDCJ, but Plaintiff complained that such an approved covering was insufficient. Fattori then called Defendant Rutledge who stated that Plaintiff could also wear a t-shirt to provide the remaining coverage she sought. Plaintiff claims she asked Fattori to loan Plaintiff another hijab so Plaintiff would have one to wear while the other was being laundered, but Fattori allegedly refused.

Plaintiff was listed on Fattori's "lay-in roster" which ensured that she would receive passes to weekly Jumah services. Because of the way the Lane Murray Unit's computer system functions, inmates who are transferred to another unit or to a medical facility are automatically removed from the lay-in rosters. Those inmates then have to notify the chaplain when they return to the Lane Murray Unit so that they can be added back onto the roster. On October 10, 2017, Plaintiff was temporarily transferred from the Lane

Murray Unit in order to receive medical treatment. Plaintiff returned to the unit, but did not notify Fattori of her return. As a result, Plaintiff did not receive her two Jumah passes for the remaining two religious services in October 2017. Plaintiff does not address the computer system issue. Plaintiff instead contends that Fattori retaliated against her for the hijab incident by not providing Plaintiff these passes. Plaintiff also contends that Fattori caused other officers to write disciplinary cases against Plaintiff. Plaintiff further contends that her religious exercise was burdened by the failure to provide adquate accommodation for her pork-free diet. Plaintiff contends that she is offered a "meat-free" diet, but that it does not provide similar nutritional value, variety, or "overall meal enjoyment" thus causing a substantial burden to her free exercise of religion.

B.    <u>Summary Judgment Standard</u>

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense.

*Id.* at 322. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

C.    Statute of Limitations

Defendants allege that Plaintiff's claims under 42 U.S.C. § 1983 are barred because Plaintiff failed to file suit before the expiration of the limitations period. Because § 1983 has no statute of limitations provision, the Court looks to the state statute of limitations in personal injury cases. *Owens v. Okure*, 488 U.S. 235, 236 (1989). The applicable limitations period is two years in Texas. *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). The cause of action accrues, so that the statutory period begins to run, when the

plaintiff knows or has reason to know of the injury which is the basis of the action. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). The statute of limitations is tolled, however, while a prisoner fulfills the administrative exhaustion requirement of 42 U.S.C. § 1997. *Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001).

Plaintiff claims that her hijab was confiscated on August 9, 2017. Plaintiff filed this suit on August 12, 2019. Defendants provided Plaintiff's grievance records which show that she filed her first grievance on this issue on August 11, 2017, and the administrative grievance process continued through at least October 2, 2017. Therefore, at a minimum, the limitations period would have been tolled for nearly two months. Consequently, although Plaintiff's suit was filed two years and three days after the incident at issue, the limitations period was tolled during her administrative exhaustion and thus her suit is timely.

D.     Eleventh Amendment Immunity

Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Texas*, 27 F.3d 1083,1087 (5th Cir. 1994). Being sued in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same

as a suit against the sovereign. *Pennhurst State School Hosp. v. Halderman*, 465 U.S. 89 (1984).

However, the Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims; thus, a request for prospective injunctive relief against state officials or employees in their official capacities falls within an exception to Eleventh Amendment immunity. *See Ex parte Young*, 209 U.S. 123, 149 (1908).

E.      Injunctive Relief

Defendants contend that Plaintiff's claims for declaratory and injunctive relief are moot because she is no longer housed at the Lane Murray Unit where the events giving rise to her suit occurred. "The mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). An inmate's claims for declaratory and injunctive relief associated with a particular unit are rendered moot when she has been transferred to another unit. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (citing *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991)).

Plaintiff contends she has been a practicing Muslim for the last 30 years while incarcerated. However, Plaintiff has never challenged the TDCJ policy regarding hijabs prior to this suit. Furthermore, her only complaints in this suit relate to a specific determination that her hijab was noncompliant while she was housed at the Lane Murray Unit. Plaintiff has not challenged any violations of her constitutional rights at the Hobby

Unit, where she is presumably wearing a hijab in accordance with her faith. Plaintiff makes a cursory claim that she is challenging TDCJ policy, but fails to make any allegations regarding the policy generally. Instead, Plaintiff focuses her claims against officers and employees of the Lane Murray Unit for their confiscation of her noncompliant hijab. Because Plaintiff has since been transferred to the Hobby Unit and seeks declaratory and injunctive relief to be enforced at the Lane Murray Unit, those claims are therefore moot. Furthermore, as discussed below, Plaintiff has failed to show any constitutional violation or any violation of RLUIPA. Therefore, even if her claims for declaratory and injunctive relief were not moot, they would be denied.

F.    Supervisory Liability

Plaintiff contends Defendant Rutledge is responsible for policies concerning the hijab and religious diet. Plaintiff asserts Defendant Massey is responsible for all policies on the Lane Murray Unit. To the extent Plaintiff is asserting Defendants Rutledge and Massey are liable due to their supervisory positions those claims are dismissed. Supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-employee relationship. *Monell v. Department of Social Services*, 436 U.S. 658, 693 (1978); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, he may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the

moving force of the constitutional violation." *Id.* at 304. Although Plaintiff appears to be complaining that her hijab was taken, she admits it was noncompliant and does not complain that either Rutledge or Massey created the policy regarding the size of hijabs. Consequently, any claims against Rutledge or Massey as supervisors are dismissed.

G.    Qualified Immunity

A government official performing a discretionary function is entitled to qualified immunity unless his actions violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Where, as here, a defendant invokes qualified immunity in a motion for summary judgment, it is the plaintiff's burden to show that the defendant is not entitled to qualified immunity.  *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). That is, the plaintiff must present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. *Baker v. McCollan*, 443 U.S. 137 (1979). As the United States Fifth Circuit Court of Appeals has observed, "'[I]t is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal

right.'" *Price v. Roark*, 256 F.3d 364, 370 (5th Cir. 2001) (quoting *Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir. 1983)).

      1.    Constitutional Religious Freedom Claims

      When analyzing a prisoner's claim under the First Amendment that a regulation violates her right to the free exercise of religion, the Court must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and whether the regulation is rationally related to that objective. The Supreme Court has identified four factors that are relevant: (1) whether there is a valid, rational connection between the regulation and the legitimate, neutral governmental interest used to justify it; (2) whether there exists alternative means for prisoners to exercise the constitutional right at issue; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and (4) whether any alternative exists that would fully accommodate prisoners' rights at low costs to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). No single factor is dispositive, and there is no requirement that all four factors be met. *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 80 (5th Cir. 1992). Where a regulation restricts First Amendment rights in a neutral fashion, it is more likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 Fed. Appx. 923, 931-932 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)). Furthermore, where a regulation restricts one aspect of an offender's belief system but the offender is able to participate in other religious observances of his faith, such a regulation is reasonable. *Id.* (citing *O'Lone v. Shabazz*, 482 U.S. 342, 352 (1987)).

Plaintiff arguably makes two separate claims. First, that the taking of her hijab by either Defendant Nelson or Defendant Fattori violated her rights.[1] Second, that the existence of a policy regarding hijab size is generally a violation of her rights. Plaintiff does not contend, however, that the policy affects her religious practice in any particular way, and certainly does not contend that it affected her religious practice in any way after the incident at the Lane Murray Unit.

There is no dispute between the parties that Plaintiff's hijab was not compliant with TDCJ policy regarding the size of hijab allowed. Indeed, Plaintiff admits that the confiscated hijab was larger than allowed. Therefore, the seizure and removal of the noncompliant hijab by either Defendant Nelson or Defendant Fattori was not an individual constitutional violation by these Defendants. At most, it was the implementation of a policy that Plaintiff argues is unconstitutional. However, Plaintiff does not complain in any detail about how the hijab policy violates her First Amendment rights. Plaintiff admits the regulation is neutrally applied to all religious head coverings and that it is reasonable.

Plaintiff also appears to complain that Nelson forcing her to remove the noncompliant hijab in the presence of a male was a violation of her Eighth Amendment rights. Unfortunately for Plaintiff, even assuming this were such a violation, she is not entitled to monetary damages. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e),

---

[1] Defendants dispute whether Nelson actually confiscated Plaintiff's hijab in the first incident outside Plaintiff's living area. Considering the summary judgment evidence at hand, the Court presumes Plaintiff's version of the facts is accurate and that Nelson ordered her to remove the noncompliant hijab and then returned it approximately twenty minutes later before eventually having Plaintiff go to a different office with Fattori for an examination of the hijab. Even assuming this version of the facts, Plaintiff fails to show a constitutional violation or a violation of RLUIPA.

bars recovery of damages for mental anguish absent a showing that the plaintiff suffered a physical injury while in custody. The Fifth Circuit has held that allegations of "mental anguish, emotional distress, psychological harm, and insomnia" are barred by § 1997e(e). *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Plaintiff does not allege any physical injury, therefore her claims for damages against Defendant Nelson or Defendant Fattori for mental and emotional distress are barred.

For similar reasons, Plaintiff's claim for damages for violations of the Fourteenth Amendment are barred. The Fourteenth Amendment's Equal Protection Clause commands that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In the context of prisoner litigation, the Supreme Court has not required that each religious denomination receive "identical facilities or personnel," but rather that "reasonable opportunities . . . be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). To survive summary judgment on her equal protection claim, Plaintiff needs to "allege and prove that [s]he received treatment different from that received by similarly situated individuals." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam). In addition, she must also "demonstrate that prison officials acted with a discriminatory purpose" in treating her differently from other similarly situated prisoners. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (per curiam). "'Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not

simply in spite of, the adverse impact it would have on an identifiable group.'" *Id.* (quoting *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992) (per curiam)); *see also Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 862-63 (5th Cir. 2004) (affirming summary judgment dismissal of prisoner's equal protection claim where prisoner "offered little or no evidence that similarly situated faiths [we]re afforded superior treatment, or that TDCJ's policy was the product of purposeful discrimination").

In addition to failing to allege any injury, Plaintiff also admits that all Muslims are treated equally regarding the hijab regulations. In addition, Plaintiff does not allege any discriminatory intent. Plaintiff even admits that other religions which believe in head covering are also treated identically. Consequently, Plaintiff has failed to show that her Fourteenth Amendment equal protection rights were violated, much less that any clearly established right was violated by the conduct of Defendants.

2.   RLUIPA Claims

Plaintiff alleges that Defendants have violated her rights under RLUIPA by confiscating her noncompliant hijab, by refusing to provide an additional hijab for Plaintiff to wear while laundering her other hijab, and by failing to provide an adequate pork-free diet. "RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 612 (5th Cir. 2008). RLUIPA provides, in relevant part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc–5(7)(A). Under RLUIPA, Plaintiff carries an initial burden to show that the challenged law, regulation, or practice substantially burdens the exercise of her religion. *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004). Once Plaintiff makes this showing, Defendants bear the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Id.*; *see also Sossamon v. Texas*, 563 U.S. 277, 281 (2011).  Defendants' burden "is not to show that it considered the claimant's proposed alternatives but rather to demonstrate those alternatives are ineffective." *Ali v. Stephens*, 822 F.3d 776, 786 (5th Cir. 2016).

To establish a "substantial burden" a prisoner must show that "it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins*, 393 F.3d at 570. That burden is satisfied if the prisoner shows that because of a government action, regulation, or restriction, he was (1) influenced to act in a way that violated his religious beliefs, or (2) forced to choose between enjoying a generally available benefit and following his religious beliefs. *See id.* "If the plaintiff meets this burden of proof, the burden shifts to the government to demonstrate that its action was supported by a compelling interest and that the regulation is the least

14

restrictive means of carrying out that interest." *DeMoss v. Crain*, 636 F.3d 145, 150 (5th Cir. 2011) (internal quotation marks and citation omitted).

As explained by the Fifth Circuit in *Davis v. Davis*, 826 F.3d 258 (5th Cir. 2016), Congress enacted RLUIPA to address "frivolous or arbitrary" barriers impeding institutionalized persons' religious exercise, but expected courts entertaining RLUIPA challenges to also "accord 'due deference to the experience and expertise of prison and jail administrators.'" *Id.* at 264 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 716–17 (2005). "Religious accommodations must not override other significant interests in maintaining order and safety, and courts should give deference to prison officials 'in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Id.* at 264-65 (quoting *Cutter*, 544 at 723). Costs, limited resources, and prison security are all compelling state interests. *Cutter*, 544 at 723.

If the government succeeds in showing a compelling interest as applied to the specific inmate, it must then show that its policy is the least restrictive means of achieving that interest. "'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal'" other than the challenged policy. *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (alteration in original) (quoting *Hobby Lobby*, 134 S. Ct. at 2780). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* (quoting *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 815 (2000)). RLUIPA compels a "fact-intensive inquiry" into the particular costs and risks that the requested

exemption engenders. *Chance v. Tex. Dep't of Crim. Justice*, 730 F.3d 404, 418 (5th Cir. 2013) (*quoting Moussazadeh*, 703 F.3d at 795–96.

As a preliminary matter, Plaintiff does not state a claim under RLUIPA against any individual defendant in this case. Plaintiff contends that the removal of her hijab for twenty minutes while in the presence of a male officer was a substantial burden. However, such a claim is a claim against Nelson, an individual defendant. It is well established that a cause of action does not exist under the RLUIPA against an individual defendant in her individual capacity. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 329 (5th Cir. 2009). Likewise, RLUIPA does not authorize a suit for money-damages. *See Sossamon*, 563 U.S. 277.

To the extent that Plaintiff seeks declaratory and injunctive relief under RLUIPA she has not carried her burden to show that the challenged practice substantially burdens the exercise of her religion. Plaintiff does not allege that TDCJ's policy regulating the manner in which a Muslim female prisoner may wear a hijab required her to significantly modify her religious behavior or significantly violate her religious beliefs. *Adkins*, 393 F.3d at 570. Plaintiff also does not allege facts that show that she was forced to choose between wearing a hijab and a generally available, non-trivial benefit. *Id.* In fact, the undisputed summary judgment evidence shows that TDCJ affords every Muslim female offender the opportunity to wear a hijab at all times. TDCJ's policy merely prevents Plaintiff from wearing a hijab in a manner that is not otherwise generally allowed. According to CDM 05.01**,** TDCJ requires that all female offenders wearing hijabs drape

them over the head and tie them at the base of the neck and ensure that it measures no more than 40.9"x40.9". Defs. Ex. B at 00196; Ex. A at 00139.

Plaintiff cannot deny that the current policy allows her to always wear a hijab. The only question is whether the mandated policy regarding the measurement of the hijab imposes a substantial burden upon Plaintiff's ability to exercise her religious beliefs. RLUIPA does not give prisoners an unfettered right to religious accommodations. *See Cutter v. Wilkinson*, 544 U.S. 709, 723–26 (2005). Requirements that religious headgear meet prescribed standards do not impose a substantial burden upon an inmate's exercise of religious belief because such policies do not prohibit a religious practice but only limit an inmate's preferences. *Turner v. Texas Dep't of Crim. Justice*, No. 18-20832 (5th Cir. Nov. 10, 2020, per curiam). A reasonable accommodation that provides for the generic tenets of an inmate's faith is all that is necessary considering a prison's limited resources. *See Chance,* 730 F.3d at 415-16. Therefore, TDCJ's hijab policy does not rise to the level of a substantial burden on Plaintiff's religious exercise. Plaintiff has failed to satisfy her burden of showing that the exercise of her religion has been substantially burdened by TDCJ's policy preventing her from wearing a noncompliant hijab.

As for Plaintiff's complaints regarding her pork-free diet, she likewise fails to show a substantial burden on her religious exercise. Just before Plaintiff was transferred to the Lane Murray Unit in late July 2017, clinic notes from her previous unit on July 20, 2017 indicate that Taylor was diagnosed with shingles, Bell's palsy, and in need of "PT, OT for swallowing, facial muscle strengthening-right side face . . . [and a] soft diet due to right facial droopiness, swallowing capabilities. She is able to swallow pills, consume liquids

with straw, swallow soft foods. She has been consuming broth for electrolytes." Def. Ex. E at 00370. After her medical evaluation, Plaintiff alleges that she would receive peanut butter and jelly sandwiches that could both be consumed in light of her difficulty swallowing and support her in avoiding foods containing meat or pork given her religious requirements as a practicing Muslim. Once transferred back to the Lane Murray Unit, Plaintiff's soft food diet continued. Ex. E at 00748. On August 15, 2017, Plaintiff's difficulty swallowing remained, causing Plaintiff to complain about having peanut butter as a snack: "Patient has appointment with unit provider later today. She was given snack of peanut butter and she told the kitchen staff that this was hard for her (she should not be eating peanut butter due to difficulty swallowing and asked for applesauce[)]." *Id.*

In accord with TDCJ's Food Service Procedures Manual, when meat or pork is served, Muslim inmates have three options for meal substitutes: (1) "1 oz of sliced cheese and an additional 4 oz of the beans being served and an additional serving of the bread being served on the regular tray," (2) "1 hard-boiled egg and 1 tablespoon of peanut butter and 1 tablespoon of jelly or 1 ounce of mixed peanut butter and jelly and an additional serving of the bread being served on the regular tray," or (3) "1 tablespoon of peanut butter and 1 tablespoon of jelly or 1 ounce of mixed peanut butter and jelly and an additional serving of the bread being served on the regular tray and an additional 4 oz serving of beans being served on the regular tray." Ex. I at 00926. Again, Plaintiff is entitled to a reasonable accommodation, not any accommodation she wishes. Plaintiff's dissatisfaction with the variety of food offered to meet her pork-free diet, especially in light of her other medical dietary needs, is not a substantial burden on her religious

18

exercise. Based on the summary judgment record, Defendants are entitled to summary judgment on Plaintiff's RLUIPA claims.

     3.    <u>Retaliation</u>

Finally, Plaintiff alleges that Defendant Fattori retaliated against Plaintiff due to Plaintiff's failure to wear a compliant hijab. Plaintiff makes the conclusory allegation that after confiscating Plaintiff's noncompliant hijab, Fattori retaliated by not sending Plaintiff regular passes to attend Jumah or other religious celebrations. Plaintiff also alleges that Fattori had other TDCJ personnel "write harassing and retaliatory disciplinaries."

To prove a retaliation claim under § 1983, a prisoner plaintiff must establish: (1) a specific constitutional right at issue; (2) the defendant's intent to retaliate against the prisoner for her exercise of that right; (3) causation; and (4) a retaliatory adverse action. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights." *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). However, the Fifth Circuit has also cautioned that trial courts must carefully scrutinize these claims. *Woods*, 60 F.3d at 1166. For this reason, "mere conclusory allegations of retaliation" or a prisoner's own beliefs are insufficient to establish retaliation. *Id.*

Before she was transferred to the Lane Murray Unit, Plaintiff suffered significant medical problems. While Plaintiff was transferred to the Lane Murray Unit on July 27, 2017, she continued to leave the unit to receive medical treatment at hospitals. Plaintiff

was consistently assigned Jumah passes from the chaplaincy department. However, she submitted a grievance on October 31, 2017 stating that she was "not routinely laid in for her required devotional services" and that she had not received a response from Chaplain Fattori concerning her Jumah passes. Ex. A at 00096. The investigation of Plaintiff's complaints determined the following:

> Chaplain Fattori reports that Offender Taylor had been away from the unit for medical reasons and returned to the unit shortly before 10-20-17. When an offender is transferred away from the unit for any purpose, the offender's name is automatically removed from all of the computer generated lay-in rosters. Once an offender returns to the unit, she must notify the unit chaplain in order for their name to be added back to the respective lay-in rosters. Chaplain Fattori further reports that she has begun procedures to review the lay-in rosters the day prior to prevent an offender's name being left off the lay-in roster.

*Id.* at 00098.

On her roster checklist for October 2017 through May 2018, Fattori ensured that Plaintiff would receive her Jumah passes and not be overlooked in the computer system due to her medical appointments, making handwritten notes to check to be sure Plaintiff was on the roster prior to issuance of passes. Ex. C at 250, 257. In other words, as a result of Plaintiff's grievance, which alerted Fattori to the oversight in the computer system, Fattori instituted a change to her practices as a chaplain at the unit by noting on her lay-in rosters to specifically check that Plaintiff was added back to the lay-in roster for Jumah passes. As for disciplinary cases, Plaintiff fails to show any connection between the alleged harassing disciplinary cases and any action by Fattori. Her assertions regarding these cases are wholly conclusory. The undisputed summary judgment evidence therefore rebuts any assertion that Fattori had a retaliatory intent or that there

was any causation between Plaintiff's incident with the hijab and her failure to receive passes for religious services. Thus, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (#26) is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

It is finally **ORDERED** that all other pending motions are **DISMISSED**.

 **SIGNED** on December 1, 2020

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE